O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

NELSON HOGQUIST,               §
                               §
          Plaintiff,           §
                               §
vs.                            §     Civil No. L-05-162
                               §
                               §
GREYHOUND LINES,               §
                               §
          Defendant.           §

<u>MEMORANDUM AND ORDER</u>

Plaintiff Nelson Hogquist, acting pro se, filed suit on July 12, 2005, alleging employment discrimination and retaliation. Greyhound Lines, Defendant, filed a motion to dismiss for failure to state a claim. (Docket No. 8).  In response, Hogquist filed a series of amended complaints without waiting for Court approval, and before the Court could address Greyhound's motion to dismiss. His most recent proposed complaint would add three new defendants. Now pending are Hogquist's December 9, 2005, amended complaint (Docket No. 31), his November 28, 2005, motion for leave[1] (Docket No. 26) and Greyhound's motion to dismiss. (Docket No. 8).

Although Greyhound's motion to dismiss was a response to Hogquist's original, and now superceded, complaint, the Court will

_____

[1]The motion for leave to file included a proposed complaint identical to the one Hogquist filed in December.  The Court will treat the motion as pertaining to the December complaint.

1

now consider it in relation to the latest complaint.  The Court has also considered the issues Greyhound raised in its reply brief supporting its motion to dismiss (Docket No. 12) and its response to Hoguist's motion to amend. (Docket No. 15).  The Court will grant the motion to amend, but will require Hogquist to file a new amended complaint for reasons discussed in this memorandum.  The new amendment is necessary because it is in the interests of both parties that the case proceed only on viable issues.  It is also important that Hogquist, a pro se plaintiff, be aware of issues that, while not yet ripe for decision, will probably need to be addressed as the case develops.

## I. Factual Background and Procedural History

Hogquist's pleadings and responses contain some contradictions, redundancies, and gaps that have made it difficult to reconstruct the complete history of the dispute.  Nevertheless, it appears that Greyhound employed Nelson Hogquist, but terminated him from his position on January 15, 2003.  Hogquist was a union member, and his union had a collective bargaining agreement ("CBA") with Greyhound.  Hogquist tried to dispute the firing in several forums.

### *The EEOC*

Hogquist filed a complaint with the EEOC on or about March

2

10, 2003, alleging that Greyhound racially discriminated when it fired him.  The EEOC issued a Notice of Rights, also known as a right-to-sue letter, on or about July 31, 2003.  Hogquist filed a second charge with the EEOC on or about December 10, 2004, this time alleging that Greyhound had retaliated against him for filing his original EEOC charge.  The EEOC issued a second right-to-sue letter on approximately April 21, 2005.

### The Union Grievance Process

On the day he was fired, Hogquist appears to have filed a grievance against Greyhound through his union.[2]  Pursuant to the CBA, Hogquist's union attempted to appeal Hgquist's termination before an arbitrator, but missed a CBA-mandated deadline by one day.  The arbitrator dismissed the appeal as untimely on or about September 26, 2004.  Hogquist claims he did not learn of the dismissal until almost a year later.

### The NLRB

In addition to filing a union grievance, Hogquist alleges that he brought his complaints to the attention of the NLRB.  He claims that Greyhound and the NLRB agreed that the matter should go to arbitration, and that they would defer an NLRB unfair labor

---

[2]Hogquist did not provide these facts in his initial complaint. Instead, the Court ascertained them from a copy of an arbitrator's decision regarding that grievance, attached to Hogquist's reply to a Greyhound filing. (Docket No. 25).

3

practice investigation until after the arbitration.   While the record is unclear, the Court assumes this arbitration was to occur independently of that attempted by the union.   According to the pending proposed amendment, the agreement was between the NLRB, the union, Greyhound, and apparently Hogquist himself.   (Docket 31).   However, in an earlier filing, Hogquist stated that the union was not party to the alleged agreement between the NLRB, Greyhound, and Hogquist. (Docket No. 25).

Hogquist alleges that Greyhound refused to go to arbitration, therefore breaching its agreement with the NLRB.[3]   In an earlier proposed amended complaint, he states that the date of the breach was October 29, 2004. (Docket No. 17).   In the most recent proposal, he discusses the breach without appearing to state when it occurred.   (Docket No. 31).   Hogquist also hints that he may have further appeals pending before the NLRB (Docket No. 25), but does not elaborate on that assertion in the pending complaint.

### The Private Contract

Hogquist also alleges that he made an agreement with Greyhound and a Greyhound lawyer for Greyhound to re-employ him, but that Greyhound subsequently breached.   It appears that this agreement

---

[3]In Docket No. 25, a reply to a Greyhound filing, Hogquist states that he referred to Greyhound's "breach of agreement with the [NLRB] to arbitrate" in his initial complaint.   The Court sees no reference to the NLRB in the initial complaint. However, Hogquist does reference the NLRB in each of the proposed amended complaints.

**4**

(the "private contract") is separate from any agreements with his union or the NLRB.

It is not entirely clear when Hogquist's filings discuss the agreement with the NLRB, and when they refer to the private contract.   In his first complaint he appears to assert that Greyhound breached the private contract on or about July 19, 2003. In one proposed amendment, he reports that the date of the breach was October 29, 2004 (Docket No. 17), and in the most recent proposal he says that it was September 14, 2005. (Docket No. 31). He does not provide any details about the terms of the agreement.

Greyhound claims that Hogquist changed the date of the breach solely to comply with the pertinent statute of limitations, but that matter cannot be resolved in a Rule 12(b)(6) motion.

### Procedural History

Hogquist filed suit in this Court on July 12, 2005.  His first complaint alleged racial discrimination and retaliation.  Greyhound filed a motion to dismiss, to which Hogquist responded with a series of proposed amendments.  Hogquist also filed a response to the motion to dismiss (Docket No. 9), after which Greyhound filed a reply  (Docket No. 12) and a response in opposition to one of Hogquist's proposed amendments.  (Docket No. 15).

Magistrate Judge Notzon denied Hogquist's first purported amendment without prejudice.  (Docket No. 11).  Two subsequent

proposals are almost exact duplicates of each other, and raise the same general claims against the same party as the original complaint.  (<u>Compare</u> Docket Nos. 13 and 17 with Docket No. 1). However, the most recent and now pending proposed amendment raises a series of new claims against three new defendants: the local union, the national union, and the union's law firm.  Hogquist attempted to serve his new complaint on these putative new parties. The attempt was premature because the Court had not yet granted leave to amend.  (See Docket No. 32).

## II. Standard for Decision

The Court first considers Hogquist's motion for leave to amend his complaint.  Hogquist correctly asserts that he is entitled to "at least one amendment as a matter of law." (Docket No. 26).  Under Federal Rule of Civil Procedure 15(a), a plaintiff is entitled to one amendment as a matter of course before a responsive pleading is filed.

Greyhound's motion to dismiss is not a responsive pleading as Rule 15 contemplates.  <u>See</u> <u>Albany Ins. Co. v. Almacenadora Somex, S.A.</u>, 5 F.3d 907, 911 (5th Cir. 1993).  As indicated earlier, the oddity in this case is that Hogquist has now filed several amendments. (<u>See</u> Docket Nos. 10, 13, 17, 26 and 31).  Under the circumstances, the Court will deem all prior amendments as

6

superceded and abandoned and will grant leave to file the latest one.  (Docket No. 31).

Having done so, the Court now considers the motion to dismiss and Defendant's other filings and, based on the following observations, will require Hogquist to file still another amended complaint, modified as discussed hereafter.


### III. The EEOC Charges and the Statute of Limitations

Hogquist first asserts that Greyhound fired him because of his race, which he states is "Anglo."  Then, he claims, Greyhound retaliated against him for reporting the discriminatory discharge to the EEOC.  In its motion to dismiss, Greyhound argues that Hogquist's claims are time-barred.  The Court agrees with Greyhound as to the discrimination claim, but cannot conclude, on the current record, that the retaliation claims are time-barred.

There are two applicable statutes of limitations, one for filing a charge with the EEOC and one for filing suit in district court.  Under 42 U.S.C. § 2000e-5(e)(1), an aggrieved party must file charges with the EEOC within 180 days after the employment practice at issue took place, or within 300 days if the aggrieved party has filed a complaint with a state or local agency. Under 42 U.S.C. § 2000e-5(f)(1), an aggrieved party who has filed charges with the EEOC has 90 days after the EEOC issues notification of its

7

decision (the "right-to-sue letter") to file suit in district court. Far more than 90 days elapsed between July 31, 2003, the date the EEOC mailed a right-to-sue letter for Hogquist's racial discrimination charge and July 12, 2005, the date he filed his complaint in federal court.  His discriminatory discharge claim is therefore time-barred.

Greyhound argues that Hogquist's retaliation charge is also time-barred because he filed it with the EEOC more than two years after his termination, in excess of the 300-day statutory window. However, in his EEOC charge Hogquist appears to allege a retaliatory act occurring on October 29, 2004.  Hogquist complied by filing his claim with the EEOC within 300 days of that date.

Hogquist received a right-to-sue letter on the retaliation claim approximately April 21, 2005, and filed suit in this Court within 90 days.  If Hogquist's factual representations are taken as true, his retaliation claims may not be time-barred.


IV. Greyhound's Alleged Retaliation for Protected EEOC Activities

Even if Hogquist's retaliation claims are timely, they may be futile for other reasons.  Title VII is designed to prevent employers from firing or taking other adverse actions against employees who report discrimination.  Greyhound has argued that the facts Hogquist alleges are not adverse actions and therefore cannot

8

constitute retaliation.  But for two possible exceptions, the Court agrees with Greyhound.

To establish a prima facie retaliation case, a plaintiff must show: (1) that he engaged in activity protected by Title VII; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. See Webb v. Cardiothoracic Surgery Assoc., 139 F.3d 532, 540 (5th Cir. 1998).  Even if Hogquist could meet requirements one and three, most of the actions he alleges would fail to meet the second requirement: they do not meet the Fifth Circuit definition of "adverse employment actions."

For Title VII purposes, the term "adverse employment actions" refers only to "ultimate" actions such as hiring, discharging, promoting, and compensating.  Webb, 139 F.3d at 540.  The term does not encompass every employment decision that could possibly have some tangential effect on an ultimate decision.  Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997).  Interlocutory or intermediate decisions are not adverse employment actions under Title VII, even when they may lead to ultimate decisions.  Dupre v. Harris County Hosp. Dist., 8 F. Supp. 2d 908, 924 (S.D. Tex. 1998), citing Mattern, 104 F.3d at 708.

Hogquist's amended complaint states that in retaliation for protected activities, Greyhound 1) failed "to employ and/or re-

9

employ" him, 2) terminated him, and 3) took "adverse action" during "post-employment."   He then lists a series of what he says are specific adverse actions Greyhound took after it fired him.  To the best that the Court can determine, Hogquist has not alleged that he engaged in any Title VII protected activities until after he was terminated and filed his first EEOC charge.  If he did not engage in any protected activity before his termination, the termination itself could not have been retaliation.  Therefore, his retaliation claim must depend on adverse actions Greyhound took against him after it had already fired him.

As this case proceeds, Hogquist will have to demonstrate that the actions of which he complains qualify as "adverse" for Title VII purposes.   Many of the so-called adverse acts by Greyhound are alleged breaches of the CBA between Greyhound and Hogquist's union.  In the retaliation context, such breaches are not likely "ultimate" employment actions.   Unlike hiring, firing, or promoting, the breaches themselves did not have a direct affect on Hogquist's employment status.   Disputes concerning the process by which a termination grievance is heard do not themselves involve acts of termination.   Hogquist's other allegations also probably do not involve "adverse actions."   For example, Hogquist claims that Greyhound made false allegations about his conduct.

Hogquist has now alleged two actions that might possibly

10

constitute retaliation.  First, read generously, Hogquist's proposed amendment claims that Greyhound's refusal to re-hire him, as per the alleged private contract to re-hire him, was an act of retaliation.[4] Hiring decisions may affect an employee's "ultimate" status.  See Webb, 139 F.3d at 540.  Hogquist's theory seems strained, but under the generous Rule 12(b)(6) standard, the Court will not dismiss that claim at this time.

Second, Hogquist asserts that Greyhound failed to pay him wages and benefits due for the period up to and including the filing of this action.[5]  Decisions which affect compensation may be ultimate employment actions.  See Webb, 139 F.3d at 540.  Since the original termination claim is time-barred, this compensation claim must necessarily depend on the proposition that Greyhound is liable for compensation beginning with the retaliatory failure to rehire.

A potential difficulty with these arguments is that they appear to concern matters that Hogquist did not mention in his EEOC retaliation charge.  That document only mentions that Hogquist received late notice of the results of the grievance his union

---

[4] If Hogquist in fact formed a contract with Greyhound to be re-hired, he may have a breach of contract action under state law, as discussed later.  The mere fact that he is covered by a CBA need not strip a state court of the power to hear such a contract dispute.  See, e.g., Wells v. General Motors Corp., 881 F.2d 166, 173 (5th Cir. 1989).

[5] In an earlier affidavit, Hogquist alleges that Greyhound made at least one payment to him for back wages. (Docket No. 19).  For present purposes, the Court assumes that he continues to claim back pay, and that this was only a partial payment.

filed.  Whether that claim is truly an "adverse action" and whether Hogquist can now complain of matters beyond that claim must be resolved.  For the time being, the Court will allow Hogquist to replead his retaliation claim and attempt to address these issues.

### V. Retaliation and Discrimination for Legal Union Activities

Hogquist's proposed amended complaint next contains his "Second Cause of Action, Retaliation for Legal Union Activities by D #1." Hogquist asserts that Greyhound retaliated and discriminated against him because he engaged in protected union activities, including filing union grievances concerning work and safety conditions and presenting charges to the NLRB. He alleges, generally, that Greyhound took "adverse employment action" but alleges only one specific retaliatory act: that Greyhound accused him of violating employment rules while other employees committed similar infractions but received little or no discipline.

Retaliation for legitimate union activity may be an unfair labor practice, and therefore within the exclusive jurisdiction of the National Labor Relations Board.  There is an exception to the general rule: district courts retain jurisdiction over employer's actions that could be construed as unfair labor practices but might also be covered by a CBA.  See D.E.W.,Inc. v. Local 93, Laborers' Int'l Union of North America, 957 F.2d 196, 202 (5th Cir. 1992).

**See also Brandon v. Lockheed Martin Corp.**, 2000 U.S. Dist. LEXIS 5415, 18-19 (D. La. 2000).[6]

The Court cannot determine, on the present record, the exact nature of the retaliation for union activity claims and whether these claims are currently before the NLRB.  The Court will allow the new amendment to include them so that the record may be developed further.  The Court cautions Hogquist that if the claims prove to be solely about unfair labor practices, the Court will not have jurisdiction to decide them, and, if the claims are really for violations of the CBA, they will be subject to the analysis that follows.

## VI. Breach of the CBA

As his "Third Cause of Action" Hogquist asserts that Greyhound breached a number of provisions of the CBA.  In its motion to dismiss, Greyhound argues that these claims should have been stated as a "hybrid" claim against both Greyhound and the union, and are barred by the relevant statute of limitations.  Hogquist does not name his union in this cause of action but, as explained hereafter, he must state allegations against the union in order to sue Greyhound.  However, he need not join the union as a party.

Under § 301 of the LMRA, 29 U.S.C. § 185, district courts have

---

[6]Though unreported, Brandon provides a useful summary of Fifth Circuit cases stating the rule and its rationale.

jurisdiction to hear an individual employee's claims for breach of a CBA.  See, e.g., Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir. 1994).  If the CBA provides exclusive grievance procedures, an employee must usually attempt to exhaust them before bringing suit in district court.  Clayton v. Int'l Union, 451 U.S. 679, 681 (1981) (internal citations omitted).  This requirement is modified when an internal union grievance procedure cannot result in complete relief, id. at 685, or when a union breaches the duty of good-faith representation that it owes to its members.  See Thomas, 39 F.3d at 621-22.  When a union does not act on the grievance in good faith, an employee may bring a "hybrid" suit, so-called because the employee must formally allege two claims: 1) that the employer breached the CBA and 2) that the union breached its duty of representation.  Reed v. United Transp. Union, 488 U.S. 319 (1989). The relevant statute of limitations for a hybrid claim is six months from the date an employee learns that the CBA has been breached. See DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151 (1983)(determining that six months is the appropriate statute of limitations based on other federal law); Barrow v. New Orleans Steamship Assoc., 932 F.2d 473, 480 (5th Cir. 1991)(dismissing a claim for breach of a CBA when the employee conceded that he learned of the breach more than six months before bringing suit).

     In order to consider Hogquist's individual claim for a CBA

breach, the Court must cast his complaint as a hybrid suit, with its associated statute of limitations. The record does not, at this early stage, show the exact date that Hogquist learned about each alleged CBA violation.  He states, unhelpfully, that six of the seven alleged violations occurred on, before, and after September 14, 2005, which could, of course, mean at any time.  Confusingly, his previous proposal to amend gave the relevant date as October 29, 2004.  He provides no date information for the remaining allegation.

If Hogquist had learned of the supposed breaches by late October, 2004, far more than six months before he filed suit, the claims would be time-barred.  However, the current record does not allow the Court to determine with confidence the date on which Hogquist learned of each supposed breach.  The Court will grant leave to amend, but cautions Hogquist that in order to prevail he will have to show that he did not learn of any of these alleged breaches before early January, 2005 (six months before he filed suit) or that equitable tolling applies.  The Court observes that Hogquist filed numerous grievances and administrative complaints during 2004, making it likely that he was aware of the supposed breaches before 2005.

Of course, even if Hogquist's claims are not time-barred, he must still eventually produce evidence that both Greyhound and the union breached their respective duties to him.

15

## VII. Breach of Private Contract to Re-Hire Hogquist

As his "Fourth Cause of Action" Hogquist alleges that Greyhound made and then breached an agreement to re-hire him.  Hogquist and Greyhound allegedly intended this private contract to be independent from the CBA.  The Court has already mentioned Hogquist's separate claim that breach of this agreement was a form of illegal retaliation.

If Hogquist made a private contract with Greyhound, he may have a state law breach-of-contract claim.  The current record suggests that the contract claim arises from the same set of facts as his other claims, providing a basis for supplemental federal jurisdiction.  The Court will allow Hogquist to proceed on this claim, subject to an additional caveat.  At least twice Hogquist has changed the date he alleges that the breach occurred.  The Court cautions Hogquist that he is unlikely to survive a future motion for summary judgment or prevail at trial if he cannot present his facts credibly.

## VIII. Claims Against Putative New Parties

Hogquist's current proposal seeks to add four new claims against three new defendants: his local union, his national union, and his union's law firm.  The Court will refer to the local and international union collectively as "the union."  Hogquist's "Fifth

16

Cause of Action" accuses Greyhound and the new proposed defendants of "intentionally and fraudulently" breaching a "duty of fair representation under the CBA." The "Sixth Cause of Action" accuses all the new defendants of "intentionally and fraudulently" retaliating against Hogquist for activities protected by the LMRDA and the NLRA. The "Seventh Cause of Action" is directed only against the union law firm. The "Eighth Cause of Action" is a global complaint against all the defendants.

There is little reason to join the law firm as a defendant. The firm is not the employer who allegedly practiced racial discrimination, nor would the law firm have any reason to retaliate against Hogquist for filing an EEOC charge against Greyhound. Hogquist has not offered any showing that the law firm, as opposed to its clients, engaged in unfair labor practices. Hogquist has not pointed to any precedent or statutory authority that would allow a federal suit for mishandling his union arbitration claim. Instead, his current allegations appear to describe a state-law claim for attorney malpractice. Unless Hogquist can show satisfactory precedent showing that the law firm might be liable under federal law, he should delete the firm from his amended complaint.

Hogquist's claims against his union do little more than add it to two of his earlier claims against Greyhound: first, for breach of the CBA, and second, for retaliation because of legal union

activities.   With respect to the CBA, he claims that his union breached its duties to him by improperly handling his internal grievance proceedings.   As discussed earlier, this is precisely the type of allegation that the hybrid suit framework requires him to make. He cannot sue his employer for breaching a CBA without simultaneously showing that his union failed to act on his behalf. However, a hybrid suit requires only that Hogquist allege and prove a breach of duty by the union, not that he join the union as a party.   See Gibson v. U.S. Postal Service, 380 F.3d 886, 888-89 (5th Cir. 2004)(internal citations omitted).   He must amend his pleadings to incorporate his allegations against the union with his claim that Greyhound breached the CBA.   To repeat, it is not necessary to make the union a party-defendant, but Hogquist may choose to do so if he wishes.

    Hoqquist's claims that his union retaliated against him for his legal union activity make little sense.   He appears to mean that his union punished him for participating in the union, which would seem counter-productive for the union.   Whatever he means, unfair labor practices are usually within the jurisdiction of the NLRB. If his claims against his union amount to alleged breaches of the CBA or violations of the union's duty of good faith, the claims are encompassed in his hybrid suit claims already addressed.

    Hogquist concludes his proposed complaint with a sweeping

"Eighth Cause of Action" directed against all the defendants.  He claims that all made false statements to a range of administrative bodies, including the EEOC, the Texas Workforce Commission, the NLRB, and the Department of Labor, in violation of "general public policy, the State of Texas civil and criminal codes, [and] the United States civil and criminal codes."  These allegations are too vague to be cognizable claims.

## IX. Conclusion

The Court will grant Hogquist's motion for leave to amend but require him to file a new complaint subject to the following caveats.  His racially-discriminatory termination claim is time-barred and should be deleted.  Only two of his claims that Greyhound retaliated against him for filing EEOC discrimination charges have much chance of qualifying as such.  If his claims for retaliation for legal union activity are actually about unfair labor practices the Court will not have jurisdiction.  If they are for breaches of the CBA, they will likely be time-barred, once the Court can determine what date he learned of the supposed breaches.  Hogquist must supplement his claim for breach of the CBA with a showing that the union breached its duties to him.  He may join the union as a defendant, if he wishes.  Unless he points to specific legal authority for doing so, he should not join the union law firm.

19

Lastly, he may include his claim against Greyhound for the breach of the alleged private contract to re-hire him.

The Court has already alluded to the numerous discrepancies in Hogquist's pleadings.  In drafting a new pleading he should be aware that although he is pro se, he is subject to Fed. R. Civ. P. 11. Among other things, the Rule provides that Hogquist's signature is a certification that, to the best of his knowledge or belief, the facts he alleges are supported by existing evidence or evidence likely to be obtained after reasonable opportunity for discovery.

## X. Order

The pending motion and amendment of December 9, 2005 are GRANTED (Docket Nos. 26 and 31), though Hogquist is ORDERED to file a new amendment as described herein.  Greyhound's motion to dismiss the initial complaint is GRANTED in part and DENIED in part, as explained herein.  (Docket No. 8).  The prior tendered amendments are STRICKEN as moot.  (Docket Nos. 13 and 17).  Hogquist's new amended complaint must be filed by April 21, 2006.

DONE at Laredo, Texas, this 28th day of March, 2006.

20

**United States District Judge**